# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MARIE ETTINOFFE and SAMUEL ETTINOFFE, co-guardians of the person of, applicants to be co-guardians of the estate of, and next friends of CURVIN C. ETINOFFE, INCAPACITATED, | § § § § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | C.A. No. _____ (Jury) |
| OFFICER M. SHEIKH, OFFICER R. GUZMAN, OFFICER E. TOBIAS, OFFICER OMOJOLA, OFFICER V. ROMERO, and the CITY OF HOUSTON, | § § § § § § § § | |
| *Defendants*. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MARIE ETTINOFFE and SAMUEL ETTINOFFE, co-guardians of the person of, applicants to be co-guardians of the estate of, and next friends of CURVIN C. ETINOFFE, INCAPACITATED, PLAINTIFF (hereinafter collectively, "Plaintiff"), in the above-styled and above-numbered cause, and file this Plaintiff's Original Complaint, complaining of and against OFFICER M. SHEIKH; OFFICER R. GUZMAN; OFFICER E. TOBIAS; OFFICER OMOJOLA;

and OFFICER V. ROMERO (hereinafter collectively, "Defendant Officers"); and the CITY OF HOUSTON, DEFENDANTS (hereinafter collectively, "Defendants"), and in support thereof would respectfully show unto the Honorable Court and Jury the following:

## I. PARTIES

1.1     PLAINTIFF, CURVIN C. ETINOFFE, is an individual who resides in Harris County, Texas.  He is incapacitated, and is represented by and through MARIE ETINOFFE and SAMUEL ETINOFFE, who are co-guardians of the person, applicants to be co-guardians of the estate, and next friends of him.

1.2     DEFENDANT, OFFICER M. SHEIKH, is a Houston Police Department Officer and is being served in his official and individual capacity.  This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

1.3     DEFENDANT, OFFICER E. TOBIAS, is a Houston Police Department Officer and is being served in his official and individual capacity.  This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

1.4     DEFENDANT, OFFICER R. GUZMAN, is a Houston Police Department Officer and is being served in his official and individual capacity.  This

Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

1.5    DEFENDANT, OFFICER OMOJOLA, is a Houston Police Department Officer and is being served in his official and individual capacity. This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

1.6    DEFENDANT, OFFICER V. ROMERO, is a Houston Police Department Officer and is being served in his official and individual capacity. This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

1.7    DEFENDANT, CITY OF HOUSTON, is a governmental unit in the State of Texas and is the employer of Defendants Officer M. Sheikh, Officer Omojola, Officer E. Tobias, Officer R. Guzman, and Officer V. Romero. The City of Houston may be served with process through its City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

## II. JURISDICTION

2.1    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331, because the claims involve a question of federal law under 42 U.S.C. § 1983.

## III. VENUE

3.1   Venue is proper in this cause in the Southern District of Texas pursuant to 28 U.S.C. § 1391(a)(2) because all or substantial part of the events which gave rise to this cause of action occurred in the Southern District of Texas.

## IV. FACTS

4.1   On or about August 16, 2019, Plaintiff was near the CVS located on South Post Oak and West Orem.

4.2   Police officers were dispatched.

4.3   They arrived at the scene.

4.4   As soon as Officer Sheikh and Officer Romero spotted the Plaintiff, they jumped out of their patrol cars to pursue him.

4.5   Officer Sheikh told Officer Romero, "You go gun and I'll go taser."

4.6   They pursued Plaintiff on foot and violently tased him multiple times.

4.7   During this commotion, Officer Sheikh slammed Plaintiff to the ground forcefully, by his neck.

4.8   Multiple officers were restraining, restricting Plaintiff's movements, and holding Plaintiff down.

4.9   Officer Sheikh said, "let me see his legs, let me see his legs, now he ain't f***ing moving."

4.10   Once Plaintiff was faced down on the ground, at least three if not more officers were using their full body weight, handcuffs, and zip ties to restrain him.

4.11   Plaintiff's legs were restrained.

4.12   Plaintiff's hands were restrained behind his back.

4.13   On top of that, Officer Sheikh had his knee on Plaintiff's neck, constantly applying pressure.

4.14   After Plaintiff had been lying face down and not moving for a while, one of the officers said, "he ain't moving, wanna sit him up?"

4.15   The officers finally lifted Plaintiff up and one officer responded, "I don't think he's breathing, man."

4.16   Officers could not find the pulse.

4.17   At that point, Officer Sheikh says, "Oh, please, God, no."

4.18   EMTs arrived at the scene, performed at least two cycles of CPR, and were finally able to get a pulse.

4.19   Plaintiff was taken to Pearland Memorial Hospital in an ambulance.

4.20   The Sergeants that had arrived on the scene told all the officers who had used force to remain at the scene as Internal Affairs Division (hereinafter "IAD") representatives were on their way to question them.

4.21   The Sergeants also questioned the various officers involved.

4.22   The Sergeants were vigorously and repeatedly asking the officers present where the gun was, as they had been told that the Plaintiff had a gun.

4.23   Officer Sheikh tells one of the Sergeants, "this guy has a f***ing gun, I'm telling you, somewhere."

4.24   After questioning all the officers about the alleged gun, the officers later realized that the Plaintiff never had a gun nor any other type of weapon.

4.25   One of the Sergeants questioning officer Romero said, "we want policy."

4.26   Officer Sheikh called someone from his personal radio and said "Bro, I need a solid right now. I've gotten into some shit. The guy might not make it. That's all I can say, ok?"

4.27   In the same conversation, Officer Sheikh later said "no, this motherf***er might not make it, dude…the suspect. I did what I had to do."

4.28   Officer Sheikh also said to other officers out there "Bro, I had to do what I had to do, you know what I'm saying?"

4.29   Officer Sheikh stated "bro, this motherf***er was pulling on my partner, that's why I had to hit his a**!"

4.30   Officer Sheikh continued, "No one is going to pull on my partner, I did what I had to do."

4.31    When talking to a Sergeant, Officer Sheikh admits, "that's when I grabbed his throat and I did what I did."

4.32    Officer Sheikh also admitted to the Sergeant, "I lost my s**t man."

4.33    The Sergeant told Sheikh that in his opinion, he was justified in using his taser but says that the place he's got to be careful is with applying pressure to the neck area.

4.34    One of the Sergeants on the scene asked Sheikh if he was okay to which Officer Sheikh responded, "you know me, I handle!"

4.35    One of the Sergeants, Officer Sheikh, and other officers were making jokes on the background about when Plaintiff was found not breathing.

4.36    After that, Officer Sheikh told one of the Sergeants "had his hands on the neck area and admits to pressing down" Sheikh claims Plaintiff was face up at the time.

4.37    Officer Sheikh later explained that he came to the Plaintiff and said to the Sergeant "I take my knee and apply pressure to his neck" while Plaintiff was on his face.

## V. CAUSES OF ACTION

### Against Defendant Officers

*Violations of 42 U.S.C. Section 1983 – Excessive Force in Violation of Plaintiff's Fourth and Fourteenth Amendment Rights.*

5.1   Plaintiff hereby fully incorporate the preceding paragraphs by reference.

5.2   Defendant Officers, while acting within the course and scope of their official and individual capacities as City of Houston Police Officers, and acting pursuant to the training and policies of Defendant City of Houston, deprived Plaintiff of clearly established rights secured to him by the Constitution of the United States of America. Defendant Officers brutally and using excessive force assaulted Plaintiff without adequate provocation from Plaintiff. Defendant Officers' conduct showed conscious indifference to a right to be free of unreasonable seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States and incorporated against the States and their subdivisions by the Fourteenth Amendment to the Constitution of the United States, which was well-known to Defendant Officers at the time. Plaintiff suffered nearly fatal injuries that were clearly a result of Defendant Officers' excessive and unreasonable actions.

5.3   Plaintiff showed no threat to officers or the public when he was incapacitated. No reasonable officer or person in Defendant Officers' position would

have thought the force brought to bear was necessary to prevent imminent harm to him or the public.

5.4   Defendant Officers' actions constitute conscious indifference to Plaintiff's rights under the Fourth Amendment to the Constitution of the United States and incorporated against the States and their subdivisions by the Fourteenth Amendment to the Constitution of the United States. Their conscious indifference to those rights were the proximate causes of Plaintiff's injuries. The force Officer Officers used were greatly in excess of what the situation required, and their actions were shocking to the public.

5.5   Defendant Officers' actions were taken pursuant to customs and practices of the Houston Police Department that are so widespread as to have the force of law.

**Against Defendant City of Houston**

*Violations of 42 U.S.C. Section 1983 –*
*Policy and Procedures of Excessive Force*

5.6   Plaintiff hereby incorporate the preceding paragraphs by reference.

5.7   Defendant City of Houston has a policy of using excessive force,; this is clear from the reactions of the other police officers that were present while Defendant Officers were assaulting Plaintiff. Not one of the officers present prevents any Defendant from repeatedly assaulting Plaintiff, even while he lie motionless on the ground. Defendant City of Houston may not have had a written policy

authorizing excessive use of force, but it is apparent that all of the foregoing were standard operating procedures for the Defendants. By tacitly approving of these violations and by its proclivity to "turning a blind eye," so to speak, to gross violations of clearly established constitutional rights, Defendant City of Houston created a policy of brutality and of excessive force. This practice is so pervasive as to have the force of law.

5.8 This policy of brutality and excessive force demonstrates a conscious indifference to the clearly established constitutional rights secured to any person under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States. The foregoing policies were the producing and proximate causes of Plaintiff's injuries.

### *Violations of 42 U.S.C. Section 1983:*
### *Policy and Procedure: Failure to Properly Train*

5.9 Plaintiff hereby fully incorporate the preceding paragraphs by reference.

5.10 Defendant City of Houston failed to adequately train its officers in the following areas:

    a. Proper escalation of force;

    b. the use of excessive force;

    c. the illegality of excessive force;

    d. the constitutional limits of the use of force;

  e. the necessary and proper limits of force in a tense situation;

  f. how to negotiate with an unwell detainee;

  g. use of lethal force;

  h. how to avoid using lethal force;

  i. appropriate de-escalation;

  j. avoiding needless incapacitation;

  k. avoiding needless use of a firearm;

  l. avoiding cruel and unusual punishment; and

  m. avoiding putting knees on necks.

5.11 The policy of failing to adequately train its officers shows a conscious indifference to the rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States to the citizens and people of Harris County, Plaintiff in particular. Defendant City of Houston's failure to properly train its officers is so reckless that misconduct by its officers was inevitable. The policy of inadequate training was a producing and proximate cause of Plaintiff's injuries, and is so pervasive as to have the force of law.

## VI. DAMAGES

6.1 As a result of the occurrence that forms the basis of this lawsuit, as stated above, and as a direct and proximate result of Defendants' wrongful and

unconstitutional acts, Plaintiff suffered serious injuries and was paralyzed, will likely sustain additional serious damages in the future, and is entitled to recover:

  a. mental anguish;

  b. physical pain;

  c. physical suffering;

  d. mental or emotional pain or anguish;

  e. loss of consortium;

  f. disfigurement;

  g. physical impairment;

  h. loss of companionship;

  i. loss of society;

  j. inconvenience;

  k. loss of enjoyment of life;

  l. injury to reputation;

  m. all other nonpecuniary damages as may be supplemented; past medical bills and expenses incurred as a proximate result of the occurrence made the basis of this suit;

  n. loss of income and wages;

  o. loss of earning potential;

  p. loss of household services;

  q. all other pecuniary damages as may be supplemented;

      r.      exemplary damages;

      s.      costs of court;

      t.      expert fees;

      u.      necessary and reasonable attorney's fees;

      v.      pre-judgment interest;

      w.      post-judgment interest; and

      x.      all other miscellaneous damages as may be supplemented.

## VII. EXEMPLARY DAMAGES

7.1    Plaintiff hereby fully incorporates the preceding paragraph by reference as if fully stated herein.

7.2    Plaintiff would further show that the above-described acts and omissions of Defendants were committed with reckless and callous indifference to the federally protected rights of others, namely Plaintiffs, and was motivated by an evil intent. Thus, Plaintiff pleads to the fullest extent allowable under 42 U.S.C. § 1983 their right to recover exemplary and punitive damages.

## VIII. EXPERT FEES

8.1    Plaintiff is further entitled to receive expert fees, pursuant to 42 U.S.C. § 1988.

## IX. ATTORNEY'S FEES

9.1  Plaintiff is further entitled to receive reasonable and necessary attorney's fees, pursuant to 42 U.S.C. § 1988.

## X. JURY DEMAND

10.1  Plaintiff hereby demand a trial by jury and the appropriate fees has been tendered.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants answer the allegations herein, and upon trial thereof, Plaintiff has and recovers judgment against Defendants for all damages and injuries suffered and incurred, for pre-judgment interest, for interest on the judgment, for court costs, and for all other such relief, both in law and in equity, to which the Honorable Court establishes Plaintiff is justly entitled.

(next page)

Respectfully submitted,

**ROBERTS MARKLAND LLP**

By:  */s/ Sean A. Roberts*
Sean A. Roberts
Texas Bar No. 00797328
Fed. Bar ID No. 21877
Clive Markland
Texas Bar No. 24027475
Fed. Bar ID No. 585658
Johnny P. Papantonakis
Texas Bar No. 24032927
Fed. Bar ID No. 30065
Noah M. Horwitz
Texas Bar No. 24116537
Fed. Bar ID No. 3514879
2555 N. MacGregor Way
Houston, Texas 77004
Telephone (713) 630-0900
Facsimile (713) 630-0991
Email: sr@robertsmarkland.com
Email: cm@robertsmarkland.com
Email: jp@robertsmarkland.com
Email: nh@robertsmarkland.com
Email:eservice@robertsmarkland.com