## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MARIE ETTINOFFE and SAMUEL** | § | |
| **ETTINOFFE, co-guardians of the estate** | § | |
| **of CURVIN C. ETINOFFE,** | § | |
| **INCAPACITATED,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **C.A. No. 4:21-cv-02646** |
| | § | **(Jury)** |
| **OFFICER M. SHEIKH,** | § | |
| **OFFICER R. GUZMAN,** | § | |
| **OFFICER E. TOBIAS,** | § | |
| **OFFICER OMOJOLA,** | § | |
| **OFFICER V. ROMERO,** | § | |
| **and the CITY OF HOUSTON,** | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MARIE ETTINOFFE and SAMUEL ETTINOFFE, co-guardians of the estate of CURVIN C. ETINOFFE, INCAPACITATED, PLAINTIFF (hereinafter collectively, "Plaintiff"), in the above-styled and above-numbered cause, and file this Plaintiff's Second Amended Complaint, complaining of and against OFFICER M. SHEIKH; OFFICER R. GUZMAN; OFFICER E. TOBIAS; OFFICER OMOJOLA; and OFFICER V. ROMERO (hereinafter collectively, "Defendant Officers"); and the CITY OF HOUSTON, DEFENDANTS

(hereinafter collectively, "Defendants"), and in support thereof would respectfully show unto the Honorable Court and Jury the following:

## I. PARTIES

1.      PLAINTIFF, CURVIN C. ETINOFFE, is an individual who resides in Harris County, Texas.  He is incapacitated, and is represented by and through MARIE ETINOFFE and SAMUEL ETINOFFE, who are co-guardians of the estate.

2.      DEFENDANT, OFFICER M. SHEIKH, is a Houston Police Department Officer and is being served in his official and individual capacity.  This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

3.      DEFENDANT, OFFICER E. TOBIAS, is a Houston Police Department Officer and is being served in his official and individual capacity.  This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

4.      DEFENDANT, OFFICER R. GUZMAN, is a Houston Police Department Officer and is being served in his official and individual capacity.  This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

5.      DEFENDANT, OFFICER OMOJOLA, is a Houston Police Department Officer and is being served in his official and individual capacity.  This

Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

6.     DEFENDANT, OFFICER V. ROMERO, is a Houston Police Department Officer and is being served in his official and individual capacity.  This Defendant may be served with process by serving City of Houston City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

7.     DEFENDANT, CITY OF HOUSTON, is a governmental unit in the State of Texas and is the employer of Defendants Officer M. Sheikh, Officer Omojola, Officer E. Tobias, Officer R. Guzman, and Officer V. Romero. The City of Houston may be served with process through its City Secretary, Pat Jefferson Daniel, 900 Bagby Street, Rm. P101, Houston, Texas 77002.

## II. JURISDICTION

8.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331, because the claims involve a question of federal law under 42 U.S.C. § 1983.

## III. VENUE

9,     Venue is proper in this cause in the Southern District of Texas pursuant to 28 U.S.C. § 1391(a)(2) because all or substantial part of the events which gave rise to this cause of action occurred in the Southern District of Texas.

## IV. FACTS

10.     On or about August 16, 2019, Plaintiff was near the CVS located on South Post Oak and West Orem.

11.     Police officers were dispatched.

12.     They arrived at the scene.

13.     As soon as Officer Sheikh and Officer Romero spotted the Plaintiff, they jumped out of their patrol cars to pursue him.

14.     Officer Sheikh told Officer Romero, "You go gun and I'll go taser."

15.     They pursued Plaintiff on foot and violently tased him multiple times.

16.     During this commotion, Officer Sheikh slammed Plaintiff to the ground forcefully, by his neck.

17.     Multiple officers were restraining, restricting Plaintiff's movements, and holding Plaintiff down.

18.     Officer Sheikh said, "let me see his legs, let me see his legs, now he ain't f***ing moving."

19.     Once Plaintiff was faced down on the ground, at least three if not more officers were using their full body weight, handcuffs, and zip ties to restrain him.

20.     Plaintiff's legs were restrained.

21.     Plaintiff's hands were restrained behind his back.

22.     On top of that, Officer Sheikh had his knee on Plaintiff's neck, constantly applying pressure.

23.     After Plaintiff had been lying face down and not moving for a while, one of the officers said, "he ain't moving, wanna sit him up?"

24.     The officers finally lifted Plaintiff up and one officer responded, "I don't think he's breathing, man."

25.     Officers could not find the pulse.

26.     At that point, Officer Sheikh says, "Oh, please, God, no."

27.     EMTs arrived at the scene, performed at least two cycles of CPR, and were finally able to get a pulse.

28.     Plaintiff was taken to Pearland Memorial Hospital in an ambulance.

29.     The Sergeants that had arrived on the scene told all the officers who had used force to remain at the scene as Internal Affairs Division (hereinafter "IAD") representatives were on their way to question them.

30.     The Sergeants also questioned the various officers involved.

31.     The Sergeants were vigorously and repeatedly asking the officers present where the gun was, as they had been told that the Plaintiff had a gun.

32.     Officer Sheikh tells one of the Sergeants, "this guy has a f***ing gun, I'm telling you, somewhere."

33.    After questioning all the officers about the alleged gun, the officers later realized that the Plaintiff never had a gun nor any other type of weapon.

34.    One of the Sergeants questioning officer Romero said, "we want policy."

35.    Officer Sheikh called someone from his personal radio and said "Bro, I need a solid right now. I've gotten into some shit. The guy might not make it. That's all I can say, ok?"

36.    In the same conversation, Officer Sheikh later said "no, this motherf***er might not make it, dude…the suspect. I did what I had to do."

37.    Officer Sheikh also said to other officers out there "Bro, I had to do what I had to do, you know what I'm saying?"

38.    Officer Sheikh stated "bro, this motherf***er was pulling on my partner, that's why I had to hit his a**!"

39.    Officer Sheikh continued, "No one is going to pull on my partner, I did what I had to do."

40.    When talking to a Sergeant, Officer Sheikh admits, "that's when I grabbed his throat and I did what I did."

41.    Officer Sheikh also admitted to the Sergeant, "I lost my s**t man."

42.     The Sergeant told Sheikh that in his opinion, he was justified in using his taser but says that the place he's got to be careful is with applying pressure to the neck area.

43.     One of the Sergeants on the scene asked Sheikh if he was okay to which Officer Sheikh responded, "you know me, I handle!"

44.     One of the Sergeants, Officer Sheikh, and other officers were making jokes on the background about when Plaintiff was found not breathing.

45.     After that, Officer Sheikh told one of the Sergeants "had his hands on the neck area and admits to pressing down" Sheikh claims Plaintiff was face up at the time.

46.     Officer Sheikh later explained that he came to the Plaintiff and said to the Sergeant "I take my knee and apply pressure to his neck" while Plaintiff was on his face.

47.     These incidents are sadly commonplace for the Houston Police Department.

48.     In 2008, City of Houston employees severely beat Charles Chukwu in a Houston city jail.

49.     There was an Internal Affairs Department ("IAD") investigation.

50.     Nobody was disciplined.

51.     In 2009, City of Houston employees severely beat Trenton Garrett in a Houston city jail.

52.     There was an IAD investigation.

53.     Nobody was disciplined.

54.     In 2014, HOD Officer S. Corral used excessive force on Rueben Williams when he smashed Williams's head into an iron jail cell door.

55.     Officer Corral applied a chokehold on Williams.

56.      This occurred until Williams passed out.

57.     Williams falsely accused, and charged, Williams with felony harassment of a public servant.

58.     This ostensibly was because of Williams spitting on Officer Corral.

59.     No DNA evidence was reviewed.

60.     This charge was dismissed.

61.     No discipline to Officer Corral resulted.

62.     In 2016, City of Houston employee Lasswon Shannon severely beat Akrem Azzam in a Houston city jail.

63.     City of Houston employee Sheila Ross tolerated this behavior.

64.     Upon information and belief, there have been more than 250 instances from 2005 to 2018 of HPD Officers wounding or killing people with no resulting discipline, despite clear excessive use of force.

65.     On July 21, 2000, HPD Officers severely beat Wanda Brent in a Houston city jail.

66.     Upon information and belief, no discipline occurred.

67.     On February 17, 2007, City of Houston employees used excessive force upon Steven Mikeasley in a Houston city facility.

68.     Upon information and belief, no discipline occurred.

69.     On June 5, 2007, HPD Officers used excessive force upon Brian Golott in a Houston city jail.

70.     Upon information and belief, no discipline occurred.

71.     On September 23, 2007, HPD Officers used excessive force on an unascertained detainee in a Houston city jail.

72.     Upon information and belief, no discipline occurred.

73.     On November 19, 2007, HPD Officers used excessive force upon Hasan Matthews in a Houston city jail.

74.     Upon information and belief, no discipline occurred.

75.     On January 27, 2008, HPD Officers used excessive force upon Samuel Smith in a Houston city jail.

76.     Upon information and belief, no discipline occurred.

77.     On April 4, 2008, at least six HPD Officers used excessive force upon Alexandra Koch in a Houston city jail.

78.     Upon information and belief, no discipline occurred.

79.     On May 26, 2008, HPD Officers used excessive force upon Kenneth Cert in a Houston city jail.

80.     Upon information and belief, no discipline occurred.

81.     On June 5, 2008, HPD Officers used excessive force upon Nakia Stark in a Houston city jail.

82.     Upon information and belief, no discipline occurred.

83.     On June 21, 2008, HPD Officers used excessive force upon Jeffrey Clark.

84.     Upon information and belief, no discipline occurred.

85.     On June 21, 2008, three HPD Officers used excessive force upon an unascertained detainee, identified as a man in a yellow shirt and red visor, in a Houston city jail.

86.     Upon information and belief, no discipline occurred.

87.     On July 26, 2008, HPD Officers severely beat Clyde Jones in a Houston city jail.

88.     Upon information and belief, no discipline occurred.

89.     On September 30, 2008, HPD Officers severely beat Furrell Holmes in a Houston city jail.

90.     Upon information and belief, no discipline occurred.

91.    On October 18, 2008, HPD Officers severely beat an unascertained detainee in a Houston city jail.

92.    Upon information and belief, no discipline occurred.

93.    On December 28, 2008, three HPD Officers came into the Houston city jail with an unascertained detainee whose head had been recently bloodied.

94.    Upon information and belief, no discipline occurred.

95.    On January 17, 2009, five HPD Officers used excessive force upon Timothy Peavy in a Houston city jail.

96.    Upon information and belief, no discipline occurred.

97.    On April 12, 2009, HPD Officers used excessive force upon Oliver Nicholas.

98.    Upon information and belief, no discipline occurred.

99.    On August 23, 2009, HPD Officers used excessive force and choked an unascertained detainee.

100.    Upon information and belief, no discipline occurred.

101.    On October 13, 2009, HPD Officers used excessive force upon C. Whitley.

102.    Upon information and belief, no discipline occurred.

103.    On December 12, 2009, HPD Officers used excessive force upon Eric Cossie.

104.   Upon information and belief, no discipline occurred.

105.   On February 13, 2010, HPD Officers used excessive force upon David Compean.

106.   Upon information and belief, no discipline occurred.

107.   On March 3, 2020, HPD Officers used excessive force upon a Mr. Cooper in a Houston city jail.

108.   Upon information and belief, no discipline occurred.

109.   On May 3, 2010, HPD Officers used excessive force upon a David Luke in a Houston city jail.

110.   Upon information and belief, no discipline occurred.

111.   On August 12, 2010, a HPD Officer severely beat a W. Cotley in a Houston city jail.

112.   Upon information and belief, no discipline occurred.

113.   On August 15, 2010, HPD Officers used excessive force upon a Mr. Harrison in a Houston city jail.

114.   Upon information and belief, no discipline occurred.

115.   On March 16, 2011, HPD Officers used excessive force upon Lewis Henderson in a Houston city jail.

116.   Upon information and belief, no discipline occurred.

117.   On April 27, 2011, HPD Officers used excessive force upon Donald Brooks in a Houston city jail.

118.   Upon information and belief, no discipline occurred.

119.   On June 24, 2011, HPD Officers used excessive force upon Charles Perez in a Houston city jail.

120.   Upon information and belief, no discipline occurred.

121.   On October 24, 2011, a City of Houston employee used excessive force upon Pedro Barrero in a Houston city jail.

122.   Upon information and belief, no discipline occurred.

123.   Upon information and belief, from 2004 to 2018, about 450 HPD Officers have been involving in killing or wounding Houstonians.

124.   None was indicted.

125.   None was disciplined after an IAD investigation.

126.   About one-quarter (25 percent) of these incidents involved unarmed Houstonians.

127.   On October 1, 1998, HPD Officer Anthony M. Ruggeroli and Officer Brian T. Mitchel used excessive force upon Houstonians.  Specifically, the Officers shot at a vehicle, smashed the vehicle window, and sought to seize the passengers therein.

128.   The Officers were not disciplined.

129.    In 1999, HPD Sgt. Glover used his gun to smash a vehicle window. The gun fired and struck a passenger.  Sgt. Glover then shot the other passenger.

130.    Sgt. Glover faced no discipline despite the excessive force.

131.    In 1999, HPD Officer R.A. Williams used excessive force upon Jason Arboleda when he shot and killed Arboleda.

132.    Officer Williams was never disciplined.

133.    In 2000, HPD Officer R.C. Headley shot a Mr. Langston and a Mr. Plumbar without reason or justification, thereby using excessive force.

134.    Officer Headley was not disciplined.

135.    In 2002, HPD Officer Ted A. Adams, who had 41 previous complaints, used excessive force upon a Houstonian by using a leg sweep that knocked down the Houstonian onto the pavement.

136.    Officer Adams received a mere one-day suspension.

137.    In 2003, HPD Lt. Hillman shot and killed Kevin Lunsford, who was unarmed.

138.    Lt. Hillman used excessive force upon Lunsford.

139.    Lt. Hillman was not disciplined.

140.    On October 31, 2003, HPD Officer Butler shot and killed 15-year-old Jose Vargas, who was unarmed.

141.    Officer Butler used excessive force upon Vargas.

142.   Officer Butler was not disciplined.

143.   In 2003, HPD Officer R. L. Plotner shot and killed Juan Lozano.

144.   Officer Plotner used excessive force by improperly shooting and killing Lozano without proper justification.

145.   Officer Plotner was not disciplined.

146.   In 2003, HPD Officer Rivera shot and killed a Houstonian despite not being in proper fear of his life.

147.   Officer Rivera used excessive force.

148.   Officer Rivera was not disciplined.

149.   In 2004, HPD Officer C. Pena Jr. shot 16-year-old LaDonna Banks, who was unarmed.

150.   Officer Pena used excessive force.

151.   Officer Pena was not disciplined.

152.   In 2005, HPD Officer Thompson shot Timothy M. Thomas, who posed no lethal danger and had no gun.

153.   Officer Thompson used excessive force.

154.   Officer Thompson was not disciplined.

155.   On August 14, 2007, HPD Officer Carraway shot 17-year-old Brittanee King, who was unarmed.

156.   Officer Carraway used excessive force.

157.   Officer Carraway was not disciplined.

158.   On June 22, 2008, an HPD Officer severely beat Henry Lee Madge in a Houston city jail.

159.   The HPD Officer used excessive force.

160.   The HPD Officer was not disciplined.

161.   On August 5, 2009, HPD Officers used excessive upon Hatice Cullingford in a Houston city jail.

162. The HPD Officers were not disciplined.

163.   In 2010, HPD Officers severely beat 15-year-old Chad Holley.

164.   The Officers used excessive force upon Holley.

165.   All of the foregoing involved detainees, like Mr. Ettinoffe.

166.   The foregoing establish a practice.

167.   This practice, though unwritten, is so widespread and such a ubiquitous custom that is rises to have the force of law as a policy.

168.   This policy has been promulgated by policymakers.

169.   These policymakers are several, but ultimately include then Houston Police Chief Art Acevedo, with whom "the buck stopped."

170.   Chief Acevedo promulgated this policy of excessive force that is and was widespread in Houston.

171.   The Plaintiff was grievously injured as a direct result of this policy.

172.   This policy has been adopted with deliberated indifference by these policymakers.

173.   These incidents are sadly commonplace.  For example, between just December 2004 and June 2007, Houston Police Department officers used Tasers 1,284 times.

174.   From 2000 to 2007, the Houston Police Department used firearms to cause at least 53 citizen deaths and at least 97 citizen injuries.

175.   All of this was well known to the Defendant Officers.

176.   Defendant Officers knew that Officers are almost never disciplined for excessive force: Not for use of Tasers, not for use of firearms, and not general brutality.

177.   These incidents, their ubiquity, gave rise to a widespread practice so persistent and so pervasive to have the force of law.

## **V. CAUSES OF ACTION**

### **Against Defendant Officers**

***Violations of 42 U.S.C. Section 1983 – Excessive Force in Violation
of Plaintiff's Fourth and Fourteenth Amendment Rights.***

178.   Plaintiff hereby fully incorporate the preceding paragraphs by reference.

179.   Defendant Officers, while acting within the course and scope of their individual capacities as City of Houston Police Officers, and acting pursuant to the

training and policies of Defendant City of Houston, deprived Plaintiff of clearly established rights secured to him by the Constitution of the United States of America. Defendant Officers brutally and using excessive force assaulted Plaintiff without adequate provocation from Plaintiff. Defendant Officers' conduct showed conscious indifference to a right to be free of unreasonable seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States and incorporated against the States and their subdivisions by the Fourteenth Amendment to the Constitution of the United States, which was well-known to Defendant Officers at the time. Plaintiff suffered nearly fatal injuries that were clearly a result of Defendant Officers' excessive and unreasonable actions.

180.  Plaintiff showed no threat to officers or the public when he was incapacitated. No reasonable officer or person in Defendant Officers' position would have thought the force brought to bear was necessary to prevent imminent harm to him or the public.

181.  Defendant Officers' actions constitute conscious indifference to Plaintiff's rights under the Fourth Amendment to the Constitution of the United States and incorporated against the States and their subdivisions by the Fourteenth Amendment to the Constitution of the United States. Their conscious indifference to those rights were the proximate causes of Plaintiff's injuries. The force Officer

Officers used were greatly in excess of what the situation required, and their actions were shocking to the public.

182.   Defendant Officers' actions were taken pursuant to customs and practices of the Houston Police Department that are so widespread as to have the force of law.

## **Against Defendant City of Houston**

### *Violations of 42 U.S.C. Section 1983 –*
### *Policy and Procedures of Excessive Force*

183.   Plaintiff hereby incorporate the preceding paragraphs by reference.

184.   Defendant City of Houston has a policy of using excessive force,; this is clear from the reactions of the other police officers that were present while Defendant Officers were assaulting Plaintiff. Not one of the officers present prevents any Defendant from repeatedly assaulting Plaintiff, even while he lie motionless on the ground. Defendant City of Houston may not have had a written policy authorizing excessive use of force, but it is apparent that all of the foregoing were standard operating procedures for the Defendants. By tacitly approving of these violations and by its proclivity to "turning a blind eye," so to speak, to gross violations of clearly established constitutional rights, Defendant City of Houston created a policy of brutality and of excessive force. This practice is so pervasive as to have the force of law.

185.   This policy of brutality and excessive force demonstrates a conscious indifference to the clearly established constitutional rights secured to any person under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States. The foregoing policies were the producing and proximate causes of Plaintiff's injuries.

186.   Excessive force was so pervasive and widespread among HPD officers that it had the force of law as an unwritten policy and custom.  The foregoing myriad incidents establish this.  And while not every incident had perfect similarity with that suffered by Plaintiff, they all went to establishing the culture and policy in which Defendant Officers acted with impunity to grievously injure Plaintiff unnecessarily.

187.   This policy was promulgated by policymakers up to and including then HPD Chief Art Acevedo.

188.   And this policy was the moving force behind Defendant Officers' actions.  Without this policy, they would not have behaved the way they did.  This policy, of engaging in and tolerating excessive force and brutality, proximately caused the incident.

189.   Deliberate indifference to Plaintiff's rights were shown.  This has been shown by the dozens and dozens of previous incidents, and that no discipline has been shown to them.  Tacit approval has occurred, and an inference may be made that such activities were in accordance with unwritten policy and custom.

### *Violations of 42 U.S.C. Section 1983:*
### *Policy and Procedure: Failure to Properly Train*

190.    Plaintiff hereby fully incorporate the preceding paragraphs by reference.

191.    Defendant City of Houston failed to adequately train its officers in the following areas:

    a.    Proper escalation of force;

    b.    the use of excessive force;

    c.    the illegality of excessive force;

    d.    the constitutional limits of the use of force;

    e.    the necessary and proper limits of force in a tense situation;

    f.    how to negotiate with an unwell detainee;

    g.    use of lethal force;

    h.    how to avoid using lethal force;

    i.    appropriate de-escalation;

    j.    avoiding needless incapacitation;

    k.    avoiding needless use of a firearm;

    l.    avoiding cruel and unusual punishment; and

    m.    avoiding putting knees on necks.

192.   The policy of failing to adequately train its officers shows a deliberate indifference to the rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States to the citizens and people of Harris County, Plaintiff in particular. Defendant City of Houston's failure to properly train its officers is so reckless that misconduct by its officers was inevitable. The policy of inadequate training was a producing and proximate cause of Plaintiff's injuries, and is so pervasive as to have the force of law.

193.   This policy was promulgated by policymakers up to and including then HPD Chief Art Acevedo.

194.   And this policy was the moving force behind Defendant Officers' actions.  Without this policy, they would not have behaved the way they did.  This policy, failing to properly train, proximately caused the incident.

195.   Deliberate indifference to Plaintiff's rights were shown.  This has been shown by the dozens and dozens of previous incidents, and that no discipline has been shown to them.  That is because there was simply no training to behave any differently.

## VI. DAMAGES

196.   As a result of the occurrence that forms the basis of this lawsuit, as stated above, and as a direct and proximate result of Defendants' wrongful and

unconstitutional acts, Plaintiff suffered serious injuries and was paralyzed, will likely sustain additional serious damages in the future, and is entitled to recover:

      a.     mental anguish;

      b.     physical pain;

      c.     physical suffering;

      d.     mental or emotional pain or anguish;

      e.     loss of consortium;

      f.     disfigurement;

      g.     physical impairment;

      h.     loss of companionship;

      i.     loss of society;

      j.     inconvenience;

      k.     loss of enjoyment of life;

      l.     injury to reputation;

      m.     all other nonpecuniary damages as may be supplemented; past medical bills and expenses incurred as a proximate result of the occurrence made the basis of this suit;

      n.     loss of income and wages;

      o.     loss of earning potential;

      p.     loss of household services;

      q.     all other pecuniary damages as may be supplemented;

r.      exemplary damages;

s.      costs of court;

t.      expert fees;

u.      necessary and reasonable attorney's fees;

v.      pre-judgment interest;

w.      post-judgment interest; and

x.      all other miscellaneous damages as may be supplemented.

## VII. EXEMPLARY DAMAGES

197.   Plaintiff hereby fully incorporates the preceding paragraph by reference as if fully stated herein.

198.   Plaintiff would further show that the above-described acts and omissions of Defendants were committed with reckless and callous indifference to the federally protected rights of others, namely Plaintiffs, and was motivated by an evil intent.   Thus, Plaintiff pleads to the fullest extent allowable under 42 U.S.C. § 1983 their right to recover exemplary and punitive damages.

## VIII. EXPERT FEES

199.   Plaintiff is further entitled to receive expert fees, pursuant to 42 U.S.C. § 1988.

## IX. ATTORNEY'S FEES

200.   Plaintiff is further entitled to receive reasonable and necessary attorney's fees, pursuant to 42 U.S.C. § 1988.

## X. JURY DEMAND

201.   Plaintiff hereby demand a trial by jury and the appropriate fees has been tendered.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants answer the allegations herein, and upon trial thereof, Plaintiff has and recovers judgment against Defendants for all damages and injuries suffered and incurred, for pre-judgment interest, for interest on the judgment, for court costs, and for all other such relief, both in law and in equity, to which the Honorable Court establishes Plaintiff is justly entitled.


(next page)

Respectfully submitted,

**ROBERTS MARKLAND LLP**

By:     */s/ Sean A. Roberts*
        Sean A. Roberts
        Texas Bar No. 00797328
        Fed. Bar ID No. 21877
        Clive Markland
        Texas Bar No. 24027475
        Fed. Bar ID No. 585658
        Johnny P. Papantonakis
        Texas Bar No. 24032927
        Fed. Bar ID No. 30065
        Rob O. Cantu
        Texas Bar No. 24094580
        Fed. Bar ID No. 3180919
        Noah M. Horwitz
        Texas Bar No. 24116537
        Fed. Bar ID No. 3514879
        2555 N. MacGregor Way
        Houston, Texas 77004
        Telephone (713) 630-0900
        Facsimile (713) 630-0991
        Email: sr@robertsmarkland.com
        Email: cm@robertsmarkland.com
        Email: jp@robertsmarkland.com
        Email: rc@robertsmarkland.com
        Email: nh@robertsmarkland.com
        Email:eservice@robertsmarkland.com

## **<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, and further pursuant to Local Rule 5.3 of the Local Rules of the United States District Court for the Southern District of Texas, I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's electronic filing system on the 6th day of January, 2022.

*/s/ Sean A. Roberts*
Sean A. Roberts