United States District Court
Southern District of Texas
**ENTERED**
October 05, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIE ETTINOFFE, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-02646 |
| § | |
| OFFICER M SHEIKH, *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER

Plaintiffs Marie and Samuel Ettinoffe brought this suit on behalf of Curvin Ettinoffe, alleging that the City of Houston is liable for (1) employing a policy that permits officers to use excessive force and (2) failing to adequately train its officers. Pending before the Court is Defendants' Motion to Dismiss the Ettinoffes' Third Amended Complaint. ECF No. 29. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

I.   BACKGROUND

  A.  Factual Background[1]

On August 16, 2019, police officers were dispatched to a CVS to respond to a call reporting a possible theft. ECF No. 28 ¶¶ 10-11. Upon arrival, Officer Sheikh shouted to Officer Romero: "You go gun and I'll go taser." *Id.* ¶ 16. They yelled at Ettinoffe to get on the ground, and Sheikh shouted "pop him, pop him!" *Id.* ¶¶ 17-18. The officers "violently tased [Ettinoffe] multiple times." *Id.* ¶ 19. Sheikh "slammed [Ettinoffe] to the ground using excessive force, by his neck." *Id.* ¶ 21. Soon, multiple officers were "restraining Mr. Ettinoffe, restricting Mr. Ettinoffe's movements, and

---

[1] At this stage, all well-pleaded factual allegations are accepted as true. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

1

holding Mr. Ettinoffe down." *Id.* ¶ 22. Sheikh said, "let me see his legs, let me see his legs, now he ain't f***ing moving." *Id.* ¶ 23.

Once Ettinoffe was lying face-down on the ground, "at least three" officers used "their full body weight, handcuffs, and zip ties to restrain him." *Id.* ¶ 24. Ettinoffe's legs were restrained, and his hands were restrained behind his back. *Id.* ¶¶ 25-26. Sheikh also "had his knee on [Ettinoffe's] neck, constantly applying excessive amounts of pressure." *Id.* ¶ 27. After some time passed, "one of the officers said, 'he ain't f***ing moving'" *Id.* ¶ 28. Later, another officer said, "he ain't moving, wanna sit him up?" *Id.* ¶ 36. After seven minutes, the officers lifted Ettinoffe; Ettinoffe wasn't breathing, and the officers could not find his pulse. *Id.* ¶¶ 37-38.

EMTs soon arrived and were able to get a pulse. *Id.* ¶¶ 40-44. Ettinoffe went to the hospital, but the officers remained on the scene to be questioned by the Internal Affairs Division ("IAD") of the Houston Police Department ("HPD") and HPD sergeants. *Id.* ¶ 45-47. One officer told a sergeant that there was no gun involved. *Id.* ¶¶ 49-51. Allegedly "[i]n an attempt to cover up his excessive force conduct," Sheikh told a sergeant: "This guy has a f***ing gun, I'm telling you somewhere." *Id.* ¶ 52. No gun was found. *Id.* ¶¶ 52, 56.

After the incident, Officer Sheikh made the following statements to other officers:

- "Bro, I need a solid right now. I've gotten into some shit. The guy might not make it. That's all I can say, ok? No, on duty. This mother***er might not make it dude . . . the suspect. I did what I had to do." *Id.* ¶ 59.
- "Bro, I had to do what I had to do, you know what I'm saying?" *Id.* ¶ 60.
- "[T]his mother***er was pulling on my partner, that's why I had to hit his ass!" *Id.* ¶ 62.
- "No one is going to pull on my partner, I did what I had to do." *Id.* ¶ 63.
- "That's when I grabbed his throat and I did what I did. . . . I lost my s**t man." *Id.* ¶¶ 64-65.

Several officers, including Sheikh "were [also] making jokes about when [Ettinoffe] was found not breathing." *Id.* ¶ 70. Sheikh also admitted that he "press[ed] down" on Ettinoffe's neck with his hand and "appl[ied] pressure to [Ettinoffe's] neck" with his knee. *Id.* ¶¶ 71-72.

As a result of the incident, Ettinoffe is paralyzed from the neck down and will likely remain that way for the rest of his life. *Id.* ¶ 74.

### B. Procedural History

The Ettinoffes sued five individual officers and the City of Houston, bringing claims against the officers in their personal and official capacities and *Monell* claims against the City. ECF No. 7 ¶¶ 138-48. The defendants moved to dismiss. ECF No. 10. The Court granted the motion, dismissing with prejudice the claims against the officers in their official capacities, and dismissing without prejudice the claims against Sheikh in his personal capacity and the *Monell* claims against the City. 12/17/2021 Docket Entry.

The Ettinoffes filed a Second Amended Complaint. ECF No. 20. The defendants again moved to dismiss. ECF No. 21. Inexplicably, the Ettinoffes' counsel affirmatively abandoned all claims except for the two *Monell* claims. 5/23/2022 Minute Entry. Thus, the Court dismissed with prejudice all claims against the officers. *Id.* The Court dismissed without prejudice the *Monell* claims. *Id.* The Court instructed the Ettinoffes that this would be the last opportunity to amend. *Id.*

The Ettinoffes filed a Third Amended Complaint, bringing excessive-force claims against the officers, ECF No. 28 ¶¶ 208-12, and *Monell* claims against the City based on a policy of excessive force and failure to train, *id.* ¶¶ 213-25. The defendants again moved to dismiss. ECF No. 29. The Ettinoffes responded, ECF No. 30, and the defendants replied, ECF No. 32.

## II. STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering such a motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458,

461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### III.  ANALYSIS

Officer Sheikh and the City of Houston ("Defendants") move to dismiss the following claims: (A) the Ettinoffes' claims against the officers; (B) the Ettinoffes' *Monell* claims against the City based on an official-policy theory; and (C) the Ettinoffes' *Monell* claims against the City based on a failure-to-train theory.

#### A.  Claims Against the Individual Officers

First, the Ettinoffes' Third Amended Complaint brings an excessive-force claim against the individual officers. ECF No. 28 ¶¶ 208-12. The defendants correctly point out that the Court has already dismissed these claims *with prejudice*. ECF No. 29 at 7; *see* 5/23/2022 Minute Entry. Thus, the Ettinoffes cannot bring them again. *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1155 (5th Cir. 2021). The Ettinoffes' claims against the individual officers are **DISMISSED WITH PREJUDICE**.

#### B.  Official-Policy *Monell* Claim

The City moves to dismiss the Ettinoffes' *Monell* claim based on the City's alleged policy of permitting its officers to use excessive force. "[M]unicipal liability under § 1983 is limited to

deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature.'" *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 316–17 (5th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "To state a claim under *Monell* and its progeny," the Ettinoffes must "allege (1) that 'an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality'; (2) that the allegedly unconstitutional action constitutes a 'custom or policy'; and (3) that there was 'a violation of constitutional rights whose moving force is the policy or custom.'" *Brown v. Tarrant County*, 985 F.3d 489, 497 (5th Cir. 2021) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166–69 (5th Cir. 2010)); *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017).

### 1. Prong 1: Official Policymaker

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The identity of a policymaker is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Still, "a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016). Thus, in *Groden*, the plaintiff "carried his burden of connecting the policy to the city council by alleging that the city '[publicly] announced' the policy and that its 'spokesman' gave 'media interviews describing the new policy.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Groden*, 826 F.3d at 286). Similarly, Chief Judge Rosenthal recognized that a complaint plausibly indicated a policymaker by alleging "that the

5

policies were promulgated by 'the policymakers of the Houston Police Department, up to and including Chief Art Acevedo.'" *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 455 (S.D. Tex. 2021).

The Third Amended Complaint alleges that the policy permitting the use of excessive force "has been promulgated by policymakers and decision makers of the City of Houston and the City of Houston Police Department, but ultimately include the then Houston Police Chief Art Acevedo." ECF No. 28 ¶ 199. It further alleges that "Chief Acevedo promulgated this policy of excessive force that is and was widespread in Houston indicating ratification and acceptance of HPD's patterns, practices, customs and/or procedures of the excessive force." *Id.* ¶ 200.

The City argues that these allegations are insufficient for two reasons. First, the City argues that no facts connect the policy to Chief Acevedo. But when a plaintiff seeks to show an official policy through a pattern or custom, they must show only "[a]ctual or constructive knowledge of such custom" on behalf of the policymaker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). The Ettinoffes alleged that Acevedo had constructive knowledge of the use of force because the use of force was frequent, prevalent, and widely known. ECF No. 28 ¶¶ 203-05. At the motion-to-dismiss stage, this is enough.

Second, the City argues that Acevedo's tenure as Chief began only in November of 2016 and all but one of the prior instances to which the Ettinoffes point occurred before then. Although the City does not explain why this fact matters, presumably it raises this timing issue to suggest that Acevedo could not have promulgated the policy. Because the Ettinoffes allege that the police had a custom or practice of using excessive force, the pre-November 2016 incidents are relevant because they inform the inquiry of whether Acevedo had constructive knowledge of any custom.

At the motion-to-dismiss stage, the Ettinoffes adequately allege an official policymaker to satisfy prong 1 of the *Monell* inquiry.

### 2. Prong 2: Official Policy

Next, the Ettinoffes must adequately allege an official policy. An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (citation and quotation marks omitted). The Ettinoffes argues that the City employed a widespread practice so pervasive as to have the force of law. *See* ECF No. 30 at 10. "To find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (internal citations omitted).

A plausible pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields*, 860 F.3d at 810 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)) (cleaned up). The similarity requirement "should not be exaggerated," but the prior acts must "be fairly similar to what ultimately transpired." *Id.* As for specificity, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Pena*, 879 F.3d at 622 (quoting *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

Finally, with respect to numerosity, "[t]he number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies." *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2017) (citation omitted). "Other than requiring more than one incident by non-policymakers, neither the Fifth Circuit nor the Supreme Court [has]

7

set a specific number of incidents that is required for a plausible claim of municipal liability under a custom or practice." *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2019 WL 4603794, at *7 (N.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, No. 3:17-CV-01208-M-BT, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (citation omitted). Significantly, courts do not apply a strict numerical threshold but instead look at the incidents in context. *See, e.g.*, *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 2277504, at *10-11 (N.D. Tex. June 23, 2022). "Where the violations are flagrant or severe," a shorter pattern of conduct can demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

With those standards in mind, the Court cannot ignore "that the procedural posture of this case is distinguishable from much of the case law on establishing a pattern." *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010). The precedential cases on which the City relies all occurred at the summary-judgment stage—in other words, only *after* discovery had occurred. *See Davidson*, 848 F.3d at 396-97; *Hicks-Field*, 860 F.3d at 810; *Carnaby v. City of Houston*, 636 F.3d 183, 189-90 (5th Cir. 2011); *Peterson*, 588 F.3d at 850; *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2005).

At the motion-to-dismiss stage, "more general" allegations are permitted because "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011) (Ellison, J.); *see also Brown v. City of Houston*, 297 F. Supp. 3d 748, 767 (S.D. Tex. 2017) (Rosenthal, C.J.); *Donahue v. Strain*, No. CV 15-6036, 2017 WL 3311241, at *18 (E.D. La. Aug. 3, 2017). Thus, although "[c]onclusory allegations of the existence of an unwritten policy, practice, or custom are . . .

8

insufficient," *Harvey v. Montgomery County*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012) (citation omitted), a complaint may provide the defendant with sufficient notice if its allegations include, for example, "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Thomas*, 800 F. Supp. 3d at 843. In other words, "the Court must only evaluate whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Oporto*, 2010 WL 3503457, at *6 (cleaned up).

As a result, courts have been reluctant to dismiss cases in which plaintiffs alleged patterns with comparable degrees of similarity, specificity, and numerosity to the allegations in the Ettinoffes' Complaint. *See, e.g.*, *Reyes v. City of Austin, Inc.*, No. 1:21-CV-00992-LY-SH, 2022 WL 789333, at *4 (W.D. Tex. Mar. 15, 2022) (allegations of "about 10 [or] so" arrests of individuals who filmed policy activity sufficiently pleaded a practice or custom); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 535-36 (W.D. Tex. 2017) (complaint that "describe nine specific instances of EPPD officers using excessive force against mentally ill victims" survived motion to dismiss); *Donahue*, 2017 WL 3311241, at *18 (allegations of "multiple instances of misconduct involving at least three different officers" were sufficient to survive a motion to dismiss); *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 373 (E.D. La. 2016) (denying motion to dismiss *Monell* claims where the plaintiffs alleged that the superintendent failed to discipline officer with record of misconduct and sent officers the message that "they would be protected from discipline or accountability if they were charged or accused of misconduct"); *Harvey*, 881 F. Supp. 2d at 797-98 (court denied motion to dismiss where plaintiff alleged 200 incidents of excessive force over 10 years and did not inquire into level of similarity between past instances of excessive force

9

and specific conduct alleged); *Hankins v. Cmty. Educ. Centers, Inc.*, No. 5:14CV43, 2015 WL 5522008, at *12 (E.D. Tex. Sept. 17, 2015) (denying motion to dismiss *Monell* claim where plaintiff alleged four previous instances of inmates who were denied or delayed medical care); *Oporto*, 2010 WL 3503457, at *5-6 (allegations of thirty-two incidents of excessive deadly force over fifteen years that were "described in varying degrees of detail" sufficiently stated a policy or practice under *Monell*); *Myart v. City of San Antonio*, No. SA-06-CA-0256 FB(NN), 2007 WL 26805, at *2 (W.D. Tex. Jan. 3, 2007), *supplemented sub nom. Myart v. City of San Antonio*, No. CIVASA06CA0256FBNN, 2007 WL 869579 (W.D. Tex. Mar. 20, 2007) (specifically identifying the allegedly unlawful policy was sufficient to survive motion to dismiss); *Barr v. City of San Antonio*, No. CIVASA-06-CA-0261-XR, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (denying motion to dismiss where plaintiff alleged, without further detail, that city had been named a defendant in four similar lawsuits); *see also Brown*, 297 F. Supp. 3d at 766-67 (plaintiff's allegation that the prosecutor's office maintained a "do whatever it takes" culture sufficiently stated a policy or custom and therefore survived the motion to dismiss).

Likewise, the Ettinoffes' Complaint sufficiently states a policy or practice. It describes, in various degrees of detail, 48 instances in which officers allegedly used excessive force. *See generally* ECF No. 28. At least two instances involved chokeholds, and another involved an incident in which officers allegedly "thr[ew] down by the neck" a detainee who was "not fighting back." *Id.* ¶¶ 85-86, 130, 134. The Ettinoffes also allege that the Houston Police Department used tasers 1,284 times during a two-and-a-half year period and used firearms that resulted in 53 citizen deaths during a seven-year period and at least 97 injuries during the same timeframe. *Id.* ¶¶ 203-04. When considered in combination, the Ettinoffes offer more than boilerplate allegations. Without more, these allegations may be insufficient to ultimately survive summary judgment. This

case, however, is not yet at the summary-judgment stage, and the Ettinoffes have adequately pleaded a practice and custom that survives a motion to dismiss and entitles them to discovery.

### 3. Prong 3: Moving Force

The third prong of the *Monell* inquiry requires the Ettinoffes to plead that the City's allegedly unlawful policy was the "moving force" behind the constitutional violation. *Zarnow*, 614 F.3d at 171. "The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015). There must be a "direct causal connection . . . between the policy and the alleged constitutional deprivation." *Id.* (quotation omitted).

Here, the alleged constitutional deprivation is the use of excessive force. The Ettinoffes plead that multiple officers used their full body weight, handcuffs, and zip ties to restrain Ettinoffe while Ettinoffe was face-down on the ground, and that Sheikh had his knee on Ettinoffe's neck. ECF No. 28 ¶¶ 24, 27. He alleges that this happened while his legs were restrained, his hands were restrained behind his back, he was face down on the ground, and he was not moving. *Id.* ¶¶ 25-28.

"Numerous courts have held that a policy of lack of discipline and protection plausibly emboldens officers to engage in misconduct." *Vess*, 2022 WL 2277504, at *13 (collecting cases). This is the same type of allegation that the Ettinoffes put forward. *See* ECF No. 28 ¶¶ 196, 206. As a result, the Court holds that the Ettinoffes adequately allege that the City's policy or practice permitting excessive force was the moving force behind the officers' conduct. The Court therefore **DENIES** the City's motion to dismiss the Ettinoffes' official-policy *Monell* claim.

### C. Failure-to-Train *Monell* Claim

Finally, the City moves to dismiss the Ettinoffes' failure-to-train *Monell* claim. The Ettinoffes must plausibly allege that: (1) the City "was deliberately indifferent in adopting its

11

training policy;" (2) the City's "training policy procedures were inadequate;" and (3) the City's "inadequate training policy directly caused" the alleged constitutional violations. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training." *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 595 (W.D. Tex. 2020) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton*, 489 U.S. at 389.

There are two ways for a plaintiff to show deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *Canton*, 489 U.S. at 386–92). Typically, a plaintiff shows deliberate indifference by demonstrating that city employees "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997) (quoting *Canton*, 489 U.S. at 390 n.10). Alternatively, there is a narrow "single incident exception." *Id.* at 461. "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 439 F.3d 287, 295 (5th Cir. 2005) (quoting *Bryan County*, 520 U.S. at 461).

In this case, the Ettinoffes allege that the City failed to adequately train its officers in the following areas:

> (a) proper escalation of force; (b) the use of excessive force; (c) the illegality of excessive force; (d) the constitutional limits of the use of force; (e) the necessary

and proper limits of force in a tense situation; (f) how to negotiate with an unwell detainee; (g) use of lethal force; (h) how to avoid using lethal force; (i) appropriate de-escalation; (j) avoiding needless incapacitation; (k) avoiding needless use of a firearm; (l) avoiding cruel and unusual punishment; (m) avoiding putting knees on necks; and (n) the use of unnecessary excessive force while detainees are handcuffed and hogtied.

ECF No. 28 ¶ 221.

The City's argument is premised entirely on its assertion that the Ettinoffes failed to allege similar incidents and therefore cannot show deliberate indifference. As discussed above, however, the Ettinoffes' allegations related to a policy or practice survive a motion to dismiss. Moreover, "dismissal is not appropriate when evidence might be adduced showing that a police officer has received no or inadequate training[.]" *Barr*, 2006 WL 2322861, at *5; *see Pinder v. Skero*, No. 4:16-CV-03479, 2017 WL 11612501, at *10-11 (S.D. Tex. Sept. 6, 2017). As a result, the City's motion to dismiss the Ettinoffes' failure-to-train claim is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court reaffirms its previous dismissal, with prejudice, of the Ettinoffes' claims against the individual officers. Those claims are **DISMISSED WITH PREJUDICE**. The Court **DENIES** the motion to dismiss the Ettinoffes' *Monell* claims against the city based on an official policy or practice and the failure to train.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this 4th day of October, 2022.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE